And that will lead us to our final argument for today, which is Stemilt AG Services, LLC versus Columbia Legal Services versus case number 23-3548. Oh, let's see. Ms. Schmidt? Okay. I'm not aware that I wear hearing aids. I have a hearing impairment and I usually do okay. If you have a problem hearing this, just let us know. Okay, I will. And I have, I've been observing this morning and I have had a little bit of difficulty, Judge Berzon, in particular with your questions, and I think if everybody could endeavor to speak directly into the microphone. Well, Judge Fletcher and I have hearing aids as well, so. Okay. Well, we're in the club. Yeah, we're sympathetic. I appreciate that. It's going to be most difficult for me when my colleague is speaking and I'm not able to say that I wasn't able to understand, so when my colleague is speaking, that'll be the most important time to speak into the microphone. I really appreciate that. May it please the Court, I'm Andrea Schmidt on behalf of Appellant Columbia Legal Services, which is a nonprofit law firm that represented the farmworker plaintiffs in the District Court. And here, CLS challenges a ruling granting blanket discovery protection that binds CLS itself, and that contradicts the presumption that discovery materials are public, and that was made first, without a valid basis in law, and second, without a valid basis in fact. Can I, I mean, I don't want to oversimplify this case, but in my mind, as long as you can answer this question correctly, you're well on your way to winning. As I understand it, there was a lot of protected material that was produced, Washington State employee records, employment files of third parties, domestic worker payroll data, worker medical records, some stemlet financial data. Even if we vacated or the blanket protective order, those records would still be protected. Is that correct? That's correct, Your Honor. Absolutely. The ruling that is not at issue here is that validly granted protective order, which was a ruling that happened earlier in that same document. Let me ask you then, pursuing the same line of questioning, what is it that we should now do? Should we remand to the District Court so that the District Court can now sort out what is protected and what is not? Because we don't yet have a District Court order doing that. That's correct, Your Honor. No, the court should strike the first sentence on the top of 1 ER 18, vacate that sentence. So that is the challenge ruling. That's the first part of the remedy. And I'd argue that that is all that's needed here. And that's for two reasons. The first is that it would be futile to do otherwise. And the second is that the equities don't point in that direction. But if we don't remand to the District Court to sort out what's protected and what is not protected, doesn't that leave your client free to use whatever's in the record of discovery that's not been submitted into the record of the court? What constrains you then? What keeps you from using information that is protected or should be? Two things, Your Honor. First, there was a validly granted protective order that protected certain categories of confidential information, as Judge Nelson noted. Well, does that extend to all of the protected information that's now in the discovery record? Anything that qualified as that medical information or sensitive financial information under that protective order is protected and has been destroyed, actually. No, no, I get that. But is there anything else in the information that is protected that is not yet subject to a protective order? I suppose the best answer is that we don't know. And that's because Stemilt had numerous opportunities to articulate what other documents were in need of protection and what harm would result from the release of those documents in the trial court and at this court. And it hasn't done that. But isn't it also true that the sentence you're talking about pertains only to using the information in litigation? It says, in other advocacy, Your Honor. Right. So if, for example, you wanted to give it all to the newspaper, it doesn't seem to be covered. It's not protected. We have read the order to restrict all other use of the documents. But it doesn't say that. Well, it says in other advocacy. And so we've read it in the most conservative possible way in order to avoid violating the  So we have not shared the information with the media. We have not shared the information with legislators on behalf of our retained legislative clients. We have not shared the information in other litigation either. I say this only to suggest that the original order doesn't seem to have been concerned about whether there was other information that was protectable, but only with the use in litigation or advocacy, but not what a broad protective order usually covers, which would be, you know, you could give it to your daughter to read for school or something. Yes. I think, I mean, a couple of things there. First, we know that the confidential materials that are already protected have been destroyed and are not at issue. Well, wait, but do we know that? Because I mean, that would be, how was this stuff produced? Because usually when documents were produced under a protective order, you mark them as protected under the protective order. Did that happen here? When Stemlet produced documents, did they mark them as protected under the protective order? Yeah, Stemlet, it depends on at what point in production. So when it produced... Because some of it happened before there was a protective order. Some production happened before there was the order at all. And then subsequent to the order, Stemlet marked everything confidential. But then that's your duty to go in and challenge it. Except for that the burden is on Stemlet to come... Well, that's true. But if they mark it as, well, true. You could take your risk and violate it, potentially violate it and fight it out that way. But it seems to me that if it's marked protected, then you need to go into the court and say, these are not protected. The blanket protective order that would have allowed them to mark everything confidential? That's when they started doing it. Yes. It was invalidly entered because it was entered without an analysis of good cause. I'm going to go back to Fletcher's question, which is, don't we need the district court to take some responsibility? Yes. So a couple of things there. I suppose that after the court vacates the improperly granted order, Stemlet could go to the district court and properly identify documents that are in need of protection as its burden and seek a protective order under the proper standard. Well, back up, because you said anything that is covered by the protective order is already destroyed. But that's just what you view as under the protective order has already been destroyed. The things that were protected by the validly granted protective order that were in certain categories. We don't know, but there's been no agreement between the parties. And I don't get, but my assumption is that that's going to be hard to get, is agreement between the parties. But you have taken your own crack at a whole bunch of documents that either were not marked protected or were marked protected and you've destroyed them. But you are also holding a number of documents that are marked protected that you don't think are protected. You may well be right on that. But it seems to me that the district court has to work that out. We've got to, I mean, you would want the district court to work that out. You don't want to go out there and then be accused after the fact of having violated the protective order. Your Honor, if the district court is tasked with working this out on remand, it should be utterly clear that the burden is on Stemilt to articulate which documents are in need of protection, not the other way around. And it should. Well, I think our law is clear on that point. Is there a burden? So there has to be good cause and it has to be a, it has to be document by document determination effectively. Right. How many documents are we talking about here that have not been destroyed?  Tens of thousands? Hundreds of thousands? Yes. I mean, tens of thousands of documents probably. Although it's going to be by category. Like it's not, I don't have to go document A, document B, document C in a category. So it's going to be how many categories really are there, not how many individual documents. Yes. It's certainly valid good cause can be. Categories in which documents fall within the category.  Yeah. Sure. But valid good cause can be found as the category. In the original order, the district court essentially found that they had not met their burden of identifying, or they only met their burden of identifying specific discovery for which a protective order is needed as to the material that he actually protected. Right? Yes. And he didn't say as to the remainder, well, there may be more material in there that should be generically protected. He seemed to be concerned about using the information in litigation or advocacy, but not because he didn't say anything about the fact that there was any attempt to meet the burden as to anything else. That's correct, Your Honor. So if we remanded, we're now giving them a second shot at something they didn't do before. That's right. And Stemilt, I would say as to the equities, Stemilt has unclean hands here. It used falsehoods to get the protective order in the first place and finally admitted that in its briefing in this court. And it's inequitable to give Stemilt more benefit from that. We've been harmed by this protective order for almost four years now. Here's my concern. I mean, I'm with you on a lot of this, but my concern is we don't have a defined universe of documents that we know. And I just don't know why you would want to take the risk. You either got to do it on the front end or the back end. And I understand why you don't want to do it on a, hey, we want to use these, you know, of these tens of thousands, these are the only hundred that we want to use. You tried that. It backfired. I get that. But it does seem like you need to go through whatever universe has not been destroyed and get some agreement on what's protected or not. Now, you may have an argument that they can't raise new, I mean, I listed that six categories. You may have an argument that it has to fall within one of those six categories. They can't come up with a seventh and an eighth and a ninth. But it seems to me that it's in your interest to allow the district court to do that at this point. You could be right, Your Honor. And I think the important thing on a remand would be to carefully define whose burden it is and what the limits are of the new arguments that are allowed to be made. We would suggest that. One thing I don't understand. Nothing else is subject to a protective order. So what danger could you be in? There is no protective order except, I mean, there's the broad one, but there's none that is specifically targeted except the one that already exists and that you abide it by. So the fact that they mark something as protected doesn't mean it's subject to a protective order. Protective order. If the order is vacated by this court, that's probably true.   Hold on. I thought if the blanket protective order is vacated, there still is a protective order that protects those documents. There is. Oh, gee. Perhaps. Oh, well, we'd better clarify that. Okay. Because I thought you, that's where I started. And I thought you said, no, those are still protected. They, Stemilt marked everything confidential. I don't know. Let's back up. Yeah. Let's step away from what's marked. What, is there a district court order that already protects those six categories of documents separate and apart from the blanket? Yes. And that order exists in the same document as the, as the challenge. That order has been abided by and that's not what we're talking about.  And whatever is subject to the, to the blanket order that's left was never declared protected by the district court. Except, except as far as the blanket order said, you can't use it for litigation and advocacy and you have to come to me. Yes. But it didn't say it's confidential. It didn't say, it didn't make any.  Right. Yes. Yes. I now understand the, the gist of the question. Thank you very much. And I'll reserve the rest of my time for rebuttal if there aren't other questions. Thank you. Good morning, your honors. I warned my colleague that I make a better door than window, so I'll try not to stand directly in her line of sight to see you all. My name is Justo Gonzalez of the Stokes Lawrence firm representing Stemilt Ag Services. May it please the court. I had intended to begin with the jurisdictional issue, but I'm sensing the court is not really going down that path. What I will begin with then is my agreement with where I heard the court's questioning taking this case, which is where it should have been in the first place before the district court for the district court to make findings about what exactly it is Columbia Legal Services is asking for. Today, at oral argument, is the very first time Stemilt has heard that it's tens of thousands of its documents that are at issue in this appeal. Before today, we did not know that. Stemilt did not know that. Can you, can you back up, because, I mean, maybe it's been a while, it's been a few years since I've done, you know, discovery, but my recollection is when you produce documents, you mark them as confidential or not. And so I guess I'm confused why there's a lot of confusion here, because, I mean, it sounds like part of the confusion is because some documents were produced before there was a protective order in place. So the history of this case, and that's a good question, just to give you that ground, give the court this grounding. The history of this case began before a complaint had been filed. A complaint had been delivered to Stemilt through its counsel, and Stemilt's reaction was to agree to engage in mediation. It produced, in connection with that mediation, an exchange of thousands and thousands and thousands of documents, which by statute in Washington are privileged. They are confidential by nature. Because you're in this informal proceeding? Because of the mediation privilege that is statutory in Washington, I believe it's RCW 7.07. So that is the genesis of so many materials having been produced with a confidential designation. And mediation failed. Mediation failed. A complaint was filed. Those documents were reproduced, or you just said, hey, those are part of the production? Those documents were not reproduced because what they comprised was thousands and thousands and thousands of lines of financial data, wage information that identified individual employees by their employee ID number, their rate of compensation and production, if it was a piece rate production as opposed to hourly production. All of that data, which is not public, which has a legitimate basis for protection under the law, was produced. And would be protected as financial data that apparently is protected under a current protective order. We don't know if that falls within the categories of information that Columbia Legal Services believes is confidential. And that's one of the central challenges that Stemilt has had with this appeal. Obviously, the existence of the appeal when it believed it had purchased peace with dismissal with prejudice and a waiver of a right to appeal, it certainly thought this case was over at that point and no party had standing to appeal. And we maintain that none does. However, after the complaint was filed, the parties agreed, the parties are going to enter a protective order, one that is tailored to this case. Stemilt's attorneys offered a form of protective order based on the Western District model, one that identified categories of documents since it would be not feasible to go through every employee's employee file, identifying page by page. We're talking about over a couple thousand employees. Stemilt engaged in what is commonly referred to in litigation as over the fence productions. It made every employee's employee file and every file at every ranch office, and there are multiple ranch locations with hundreds of employees, with hundreds and hundreds of employee files. It opened the doors. There was no prior review, any documents that... And nothing was marked confidential. No, this was raw files from the company's field office. No, these are paper files. And this gets to the other reason that the district court entered the form of order that it did. These are files that are maintained in the orchard offices and the ranch offices. Most of them are handwritten files. They are not electronic. They're not maintained in an electronic format. They're handwritten in, hand notated, often in Spanish. That's how they're maintained. So there is no way to easily and electronically run an algorithm in an e-discovery tool and redact, for example, or identify specific content that either Stemilt or the plaintiffs were looking for to advance their claims or advance their defenses. So that is the universe of material that we're looking at. Stemilt doesn't know if that is what is at issue here and what Columbia Legal Services, the law firm, the appellant law firm, believes should not be confidential. Are they employee files? They were never redacted. They need to be protected. What I heard, we can ask for clarification in the rebuttal. What I heard, I read six or five categories, one of which included employment files of third parties. And what I was told was that those documents have already been destroyed. Now, I don't know whether that's accurate or not. And we'll ask for clarification. That's not in the record. I will make that clarification in an argument to the court. What has been destroyed and what Columbia Legal Services, the appellant law firm here, believes is not subject to valid, is not validly subject to protection under Rule 26C or the protective order that they advanced to the court. That is not in the record. We don't know what categories of materials they don't think deserve protection. We certainly don't know which documents, which individual documents don't deserve protection. It's nowhere in the record. And that's why, to the extent this appeal isn't dismissed for lack of jurisdiction, I agree the appropriate course is to remand for further proceedings so that both the appellant and the district court can decide what is contested, what is not. Let me ask you this based on what you just said. I think I just heard you say that you're conceding that the order entered by the district court is overbroad. We do concede that, Your Honor, because it's not the order we asked the court to enter either. We think it is overbroad. But it is understandable, and we actually don't... It sounds like, I mean, I'm trying to retro-engineer this, but the district court may have been worried, may have been trying to say, look, there's just too much to get into here. Come back to me with what you want to use, and then we'll figure it out. But that, of course, has its own problems. We agree that that's where we were getting at. And we addressed this in our response briefing, Your Honors. This case at the district court level was incredibly contentious. And as the district court phrased it and remarked, discovery was especially litigious. There were 15 discovery-related motions, five hearings that lasted well more than five hours in total. It was a lot of court time dedicated to discovery disputes. There were four discovery orders. The appellant law firm was sanctioned in one instance for its discovery abuse. That order is not on appeal here. However, that is the context on this second attempt to... On the party's second attempt to have a protective order entered in the case that would retroactively cover what both parties assumed would be confidential as productions were made and going forward. I'm just trying to figure out that. You say you turned over all these documents. They came in and they looked through them and then they made copies of what they wanted and they took that. I mean, do you even have a record of what you produced and what you didn't produce? We do have a record. We do have an index of what was produced and what was not. Is there any way you can go through that index? I mean, look, I don't see any way to do this without a lot of pain. But I mean, whether you do it by category or document, there's got to be some agreement between the parties on what's protected and what's not. But ultimately, you have a burden, which I think you agree with, to show that documents that are protected should be protected. So under Rule 26C, yes, Stemilt has the burden to make that showing. I would argue by category of documents in this case. Can I clarify? You're claiming these things are confidential. You're not claiming they're protected because there's no protected order that applies to them.  We believe they are. Most of Stemilt's production falls under the categories of information that were identified and included in the protective order that was proposed by Columbia Legal Services. That's fine.  Then they can't use it. And if you have a dispute about anything they use, you say it's covered by the protective order. But I thought we were only talking about what's not covered by the protective order. And that is what requires... But was more confidential by you. And that is what requires a record to be developed at the district court level, because that record was never developed. That conversation was never had. But to go back to what I said before, the district court said that you didn't make the record that you needed to make to get a specific protective order beyond what he issued. The district court's concern as expressed in the order that is challenged was that the form of protective order he read, the court read, and I don't agree with this characterization, but the court read that draft protective order, that proposal, as requiring every piece of material in the case to be filed under seal. That is why, turn back to the order itself, the district court remarked, well, Stemilt's concern is that Columbia Legal Services says they are entitled to use discovery from this case anywhere they want in any other context they want. However, their solution, Stemilt's solution, which is this proposed order with this confidentiality provision that requires filing under seal, is equally burdensome, impractical. That's not what Stemilt, as I read it, was proposing in their proposed form of protective order. But this was the balance. These were the concerns that the district court was balancing. Stemilt's concern... But when he says Plaintiff's counsel does not have free reign to utilize the information and documents discovered in this action in other advocacies in which plaintiffs are not involved, is that correct law under the Ninth Circuit? That is the correct application of Foltz, because what the district court was doing there was saying, Foltz tells me if you want, if you, if someone, a collateral litigant, for example, wants to use discovery that was produced in a case that was not filed with the court, you, the party wishing access and use of that discovery, needs to come to the court that issued the protective order and make the showing. Those are collateral people, but this is not a collateral person. Well, Columbia Legal Services is a collateral person. It is not a party to the underlying case. You are not right about it. That was the, the, the premise on which he was operating. Not because he thought there was anything protective or confidential in this, in, in this group of documents. He said his position was if it was produced in the case and, and they wouldn't have had it otherwise, they can't use it unless they come to me. And he didn't say anything about there might be material there that's entitled to be sealed. Well, he was not making that determination at that point because no party, no party was asking him to make that determination about, no party was making, making the request to  The request was to enter a protective order for exactly the categories of information that Rule 26. They didn't have to just, they didn't have to produce it? No. A protective order along the lines of Rule 26C that permits protection of, for example, sensitive financial information and trade secret information. What's the difference between sealing and, and, and a protective order? The protective order that Stemilt asked to be imposed would protect its discovery productions, especially since they were made in this kind of over the fence fashion where they weren't being reviewed first for relevance, for privilege issues, for privacy issues, statutory privacy issues. And they were just being opened because a document by document review and redaction would have been incredibly expensive. Protective order is you, you, you, you, what, you can't use it? You can't have it? You have to give it back? What does it mean? Well, that the discovery be had, either not be had or that it be had under certain conditions, under certain limitations. And then it had to be destroyed at the end of the case. Right. And both, both forms of protective order offered by the parties provided for destruction at the end of the case. So then they wouldn't be able to be used. So the question before us now is this universe that was over stamped, are any of them protected under these five categories? And how do we determine that? Absolutely. Yes. And the way to determine that is to send this back to the district court so that the parties can develop that record and have that conversation. That's what rule 60 provides for. That's the procedure that the district court invited the parties to engage in. If there were issues that would come up with either party wanting to use material in some other context. That never happened in this case. That record was never developed. And that's one, another one of the reasons why either the appeal needs to be denied and dismissed or, and we agree this is the proper outcome if Columbia Legal Services really thinks there's a legitimate need in some other context for Stemilt's property, for its sensitive financial information or employee files. If that is an issue. They can't keep, let's be clear, they can't keep that because that's already covered by a protective order and should have been destroyed. And neither Stemilt nor I, nor this court knows whether that has happened and which materials. Why does there have to be a need to use it if it's not objectively protectable? I'm sorry, Your Honor, I'm, I'm. If it's not objectively protectable, why does there have to be a need to use it? You keep coming back to that, right? And that's where you went before the district court. Well. But, but isn't the question whether there is material that they shouldn't, that, that because it's confidential, not because you prefer they don't use it, but because it's actually objectively impairs some interest of yours that you can demonstrate that they can't use. If it doesn't meet that standard, they can use it, even if you'd rather they didn't. Right. And Stemilt met that standard on a category by category basis. What now is being challenged is whether there needs to be some analysis on a document by document level, and that has never happened. Let me ask you this way, and you may or may not be able to answer this with any precision. So what kind of information are we talking about that's not already protected by specific protective orders? That is a question properly addressed to the appellant law firm. We don't know what they are challenging. What do you mean? You produced it. You should know what it is. Yes, but we don't know what they're challenging as not confidential or not subject to the protective order. Anything that's not within these five categories. But those categories are broad, and we don't know how they're interpreting it. That's why the procedure is set in place. Admittedly, this has been... Something has to be done. That's my point. You either got to do it on the front end or the back end. I mean, to a certain degree, I think you're better off doing this on the front end because otherwise, my sense from the parties is you're going to have litigation for years to come. And so, I think you're going to have to figure out what they still have and whether you think any of it's protected, and it may be that you're limited. I'm not sure I hear you disagreeing with this, that you would be limited to these five categories. You're not looking to make up new categories of protected information, are you? We're not looking to revise the protective order at all. The problem is, how do you go back and refashion a production that was over-designated because the protective order was over-broad, such that you both have an understanding of what's protected or not? So, I think it begins with the district court. And I think to get two steps removed now from where we are today, I think it begins with having a conversation with the lawyers for Stemilt and telling them, we don't think these materials fall under any of the categories that are in the protective order. And then, if there's disagreement, we can take that before the district court. Are they at least base-numbered? Everything is base-numbered, yes. So, they could at least say, look, here's 10 categories that are not protected. Here's the base numbers. And then, you would be able to go back and check that and say, we agree on these. Inevitably, you're probably going to have some disputes. And then, you go back to the district court and figure that out. Right. And when you say Stemilt's lawyers, you mean not you? Is that what you mean? When you say they need to have a conversation with Stemilt lawyers? That could include me, Your Honor. I was trial counsel as well. Oh. Oh. You weren't clear on that point. All right. Here's me being very dense. What five categories are we talking about? Where are they? I see two types of material require protection, health data and medical records, data concerning their sales profits and revenues generated by Stemilt or his parent company. That's what he says requires protection. What else are we talking about? Well, the ones I had, and maybe I didn't go back to the actual order, the Washington State Employees Security Division documents, which may or not all be protected, but employment files, that seems to be protected, domestic worker payroll data, that seems to be protected, worker medical records, that seems to be protected, and Stemilt financial data, I assume it's a private company. Privately held company. So, I assume almost all of that is going to be protected. That is our view. And the production was very large. Like I said, it was about 150,000 or so documents, including some really, really large Excel spreadsheets that contained financial data that is not public. So, it is a lot. And I see I'm very over, but I appreciate this dialogue. I do think the correct way forward, if the appeal is not dismissed, is for the parties to engage in that interactive process that the civil rules assume you're going to engage in at the front end. And if we can't reach agreement, if they can't reach agreement, then it needs to go before the district court. You don't seem to have a very good record of reaching an agreement on your own so far in this case. Well, there was quite a bit of motions practiced, but that may conceal a lot more agreement than it. It would make sense to refer this case to a mediator in the Ninth Circuit. We have wonderful mediators. Maybe they can get all this straightened out as to what's going to happen and a way of proceeding. I guess, I mean, I don't want to shortchange that if you want to mediate, but I'm not sure what a mediator would do that a district court couldn't do, and these seem like district court functions. Well, they can get in and talk to each other. Well, maybe. I appreciate that, but I do think the district and Article III judge will help the process. Just one last question. The order I read, which says there are two types of materials requiring protection, health data and medical records, data concerning sales, profits, and revenue. Is that the only protective order there is other than the one that's being challenged now? There are actually two. One that was entered earlier in the case that is not being challenged by any party.  That was covered, a production made by the Employment Security Department. The second later one is, I believe it's ECF 87. That's where some of the other categories that Judge Nelson's been reading come from? The challenged order. The order that is on appeal. Well, I think that's what Judge Berzon was reading from. I was reading from the order on appeal, but Judge Nelson was reading other things. And maybe I made this list. Well, we'll figure this out. We'll figure it out. Okay, thank you. Judge Nelson, you may have been reading from Stumbelt's proposed form of protective order. I see. Yes. Although everything I read I think is protected even under what's actually in the protective order. That's Stumbelt's view of it. All right. Well, that's what we heard from Appellant. They agreed. Anyway. Thank you. Thank you. Thank you for your patience. I can speak to what is protected really quickly. I think we got back to the correct answer. There was a previous protective order that spoke specifically to employment security documents and to redactions and employment files. The protective order under which the information was destroyed, however, was the protective order that was granted in the same document as the contested ruling here. Because the other material just wasn't produced. Is that right? No. What other material? Employment security. No, that material was produced, and it's protected. And you destroyed it? We didn't destroy the employment security information. That wasn't required under that protective order. That wasn't required under that protective order. Yes. What the protective order that was imposed validly by the court as to STMILT documents covers is health data and medical records and data concerning STMILT sales, profits, and revenue generated by STMILT or its parent company. So not employment records? No. So employment records are protected but not destroyed? Yes. But you can't use them, but that's what you used to make some anonymized data charts or something at one point. Am I making that up? I suppose in theory, yes. I'll remind the court that, well, the court may not know. STMILT received a letter about the documents that were destroyed. We destroyed the documents and sent them a letter about which documents had been destroyed. They don't believe you apparently. Well, yeah. I mean, maybe we're getting into what we would have a district court or a mediator do. What about your response to Judge Berzon's question about getting a mediator involved? Your Honor, I don't think that it would be – I think that we need a ruling from this court that the protective order was invalid and was overbought for starters. And then I think it is quite likely that the parties can agree about what needs to be protected. I want to remind the court that this blanket protective order covered information from a number of other third parties who produced documents as well. The broad protective order? Yes. Right. And I think that – And what's going to happen when this goes back down? Have any of those third parties expressed concerns? No, Your Honor. They haven't. Except for ESD, which has a protective order. And as – well, I think I'll stop there. I think the court sufficiently understands that the protective order didn't meet the standard, and I think we're asking the court for a very clear ruling as to that effect. Thank you very much. Well, thank you. Thank you to both parties for your cooperation and argument today. We hope that that continues into the future. And this case is now submitted, and we are done for the day. Thank you.
judges: FLETCHER, BERZON, NELSON